## UNITED STATES FIDELITY & GUARANTY CO v LOOMIS COAL & SUPPLY CO

Ohio Appeals, 9th Dist, Summit Co

No 1933.  Decided Jan 6, 1932

Rockwell, Grant, Thomas & Buckingham, Akron, for plaintiff in error.

Commins, Brouse, Englebeck & McDowell, Akron, and Bruce W. Bierce, Akron, for defendant in error.

Herberich, Weick & Powers, Akron, Amicus Curiae.

PARDEE, PJ.

It is admitted by everyone that the improvement was accepted by the city and that the acceptance was made by the proper officer of the city after the completion of the work, such officer being the director of public service—the plaintiff in error claiming acceptance was made by said officer on Nov. 14, 1924, and that therefore the suit was not brought by the defendant in error within the time limited by law, and the defendant in error claiming that the acceptance by said officer for and on behalf of said city was made on Nov. 15, 1926, and that therefore the suit was brought by it within time.

It is the contention of the plaintiff in error that the "engineer's certificate of 'total cost,' together with the approval of

the director of public service, was made upon the completion of the work, November 14, 1924, and thereby became a matter of public record, readily ascertainable;" and it is the contention of the defendant in error that "the final administrative determination of the amount due on the Bartges street bridge job by the director of public service, in our case, was the approval of the sixth and final estimate on November 15, 1926."

By the terms of the contract under which said improvement was made, the improvement was to be completed within a specified time, and it was provided by other pertinent parts of the contract as follows:

"Guarantee—Section 28.

"The contractor hereby agrees that all defects in the structure or other work done under this contract arising, in the opinion of the chief engineer, out of the use of defective material, settlement of foundation or improper workmanship in the construction thereof, and which from such causes may become necessary during the period of two years, after the date of the approval by the director of public service of the engineer's certificate 'total cost' shall be made by him without expense to the city, and the contractor agrees to make such repairs when and as directed by the engineer, by a written notice served upon him, and if after having received such notice, the contractor fails to make such repairs within five days from the receipt of said written notice, the city may thereupon cause said repairs to be made, and charge the expense thereof to the contractor or his surety."

"Cleaning Up—Section 33.

"As soon as the work of construction is completed, all rubbish and surplus material which may accumulate during the work herein provided for shall be removed from the site of the work by the contractor.

"Before final acceptance the contractor shall clean the pavement, gutters and crossings in a thorough and effective manner by sweeping and scraping as ordered. If the pavement is completed too late in the fall to permit the cleaning the same shall be done the following spring, after notice to the contractor from the engineer."

"Final Inspection and Repairs—Section 34.

"After the ground has been cleaned up as specified the work shall be inspected by the engineer, and all soft and inferior material found shall be replaced with good and satisfactory material, by or at the expense of the contractor; all defects in workmanship shall be repaired and made good by the contractor as the engineer may direct."

"Partial Payments—Section 37.

"The engineer shall, once a month, between the first and the tenth day, make in writing an estimate, such as in his opinion shall be just and fair, of the amount and value of the work done and materials incorporated in the work by the contractor in the performance of this contract. On the basis of this estimate, the city shall pay the contractor an amount equivalent to 90% of the value at contract prices of work so completed.

"Estimates may at any time be withheld, if, in the opinion of the engineer the work is not proceeding in accordance with the provisions of this contract."

"Final Estimates—Section 38.

"The engineer shall, within thirty days after the completion of this contract, prepare a statement of the total cost of work done hereunder, and the city shall pay the entire sum so found to be due hereunder, after deducting therefrom all previous payments and all amounts to be kept and all amounts to be retained, under the provisions of this contract. All prior partial estimates and payments shall be subject to correction in the statement of 'total cost.'"

"Retainer—Section 39.

"The city will retain 5 per cent of the entire cost of the work done by the contractor for the above guarantee period of years from the date of the approval by the director of public service of the engineer's certificate of 'total cost' which retainer may be placed in a fund to be known as Contractor's Retainer Fund in the depository paying the best rate of interest available, or the money may be left in the improvement fund, in which case the rate of interest shall be 4%. If the contractor shall have complied with all the requirements of his contract in keeping the structure and appurtenances in good and proper repair, then at the end of his guarantee period upon order of the director of public service, the contractor shall receive this retainer with interest; but if the contractor shall fail to make all necessary repairs as indicated by said engineer, at any time during the above period, then the engineer shall have power to expend all or such part of the amounts so retained as the said engineer may see fit, and apply the same to making the necessary repairs, and interest shall thereafter be allowed to the contractor

upon the residue only of the retained percentage remaining to his credit. Should the amount retained not be sufficient to make the required repairs, the contractor shall at once make good the deficiency. At the expiration of the guarantee period, as above specified, whatever remains to the credit of the contractor, provided all repairs shall have been made satisfactory to the said engineer, shall be paid to the contractor as full settlement of any balance due on said contract, as herein provided, whereupon and not until then, shall the contractor be released from the obligation assumed in this contract, and his bondsmen discharged.

"In no case shall interest on money retained be paid for any time beyond the maintenance period."

"Last Payment to Terminate Liability of City—Section 42.

"No person or corporation, other than the signer of this contract as contractor, has now any interest hereunder, and no claim shall be made or be valid, and neither the city nor its agents shall be liable for, or be held to pay any money, except as provided in Sections 36, 37, 38 and 39. The acceptance by the contractor of the last payment made as aforesaid shall operate as and shall be a release to the city and agents thereof, from all claim and liability to the contractor for anything done or furnished for, or relating to the work, or for any act or neglect of the city or of any person relating to or affecting the work, except the claim against the city for the remainder, if there be any, of the amount kept or retained as provided in Section 39."

The bill of exceptions shows that the contractor completed the work, so far as said contractor was concerned, before Nov. 14, 1924, and that the fifth estimate, called the sub-final estimate, but which is in fact a determination of the total cost of work done under the completed contract, was dated Nov. 14, 1924, which estimate was approved by the engineer in charge and the director of public service upon said date. This estimate showed the total cost of the improvement, which amount was paid to the contractor, less the amount retained for two years, as provided in said contract.

The evidence shows that at the time the engineer prepared the fifth, or sub-final, estimate, the work under the contract was all done and that no repairs were required to be made after said date; that the work had been inspected by the city engineer; that the rubbish had been removed by the contractor; that the final amount of the quantities had been fully determined by the city, and the exact amount due the contractor was definitely fixed and determined—in fact, everything was done by the contractor which was required to be done by it except those things which might be required of it during the retention period; and when the fifth estimate had been paid, everything had been done by the city which the contract required it to do except to place the retainer upon interest and pay it out as provided in the contract at the end of said two-year period, and all this had been done in strict compliance with the contract, which specifically provided that thereafter the city should be released from all liability to the contractor except as to the amount held as a retainer; and the evidence also shows that the city opened and used said improvement from and after Nov. 14, 1924, and that the retainer was paid out after the two-year retention period had elapsed, under what is called the sixth or final estimate, approved by the engineer of said city and the director of public service thereof.

From the terms of the contract and the acts and conduct of the administrative officers of the city, we are unanimously of the opinion that the director of public service of the city of Akron accepted said improvement as fully completed on Nov. 14, 1924, and that that determination was fixed by a public record—to wit, the fifth estimate, and was done in accordance with the terms of the contract and the plans and specifications under which said improvement was made, and that said acceptance was readily ascertainable from the records on file in the proper office in the city of Akron.

We are therefore unanimously of the opinion that the suit started by the defendant in error was started too late, and that the judgment entered in its favor in the Court of Common Pleas was erroneously entered. The judgment of that court is therefore reversed, and a final judgment may be entered in favor of the plaintiff in error.

WASHBURN, J, and FUNK, J, concur.